## R. M. WYNNE ET AL. V. O. S. KENNEDY ET AL.

### No. 2036.

**1. Equitable Title—Pre-emption Claim not Patented.**

Under the pre-emption Act of February 1, 1860, a settler upon 160 acres of vacant public domain, in accordance with the provisions of that Act, made due affidavit of his settlement on the land, had it duly surveyed and the field notes properly recorded in the county and filed in the General Land Office, and with his family continuously resided on the land for more than three years •after his affidavit of settlement, but did not furnish any final proofs of such three years' occupancy to the General Land Office, and did not obtain patent. Held, that he acquired the equitable title to the land, which was thereafter not subject to location by certificate, and that such title would prevail over that of an adverse claimant under a patent issued upon a location subsequently made by certificate.

**2. Same—Presumption as to Payments.**

Where the trial court found with reference .to a pre-emption claimant's title the facts of due settlement by the claimant, survey of the land, and three years' occupancy thereof, but there was no finding as to whether the settler paid the taxes from the date of the settlement, or paid to the State the 50 cents per acre due on the land, as required by the law then in force (Act of February 1, 1860), and the omission to so find is not complained of by any assignment of error, it will, in the absence of a statement of facts, and in support of the court's judgment in favor of the settler's superior equitable title, be presumed that he complied with the law in the matter of making the required payments.

**3. Limitation of Four Years—Action to Cancel Patent.**

Under Art. 3207 of the Revised Statutes, providing that "every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued," the owner of land by a superior equitable title, which authorizes

him to recover the land itself, is not entitled to maintain a cross-action to cancel an adverse patent, after the lapse of more than four years from the issuance and record of such patent.

APPEAL from Tarrant. Tried below before HON. S. P. GREENE.

*Wynne, McCart & Booty,* for appellants.—Lackey to have become the owner must not only have occupied the land for three years, but must have filed an affidavit in the land office to the effect that he has occupied and improved said land in good faith for three years, which said affidavit must have been corroborated by the affidavits of two disinterested and credible citizens of the county in which the land is situated. Pasch. Dig., arts. 7045, 7046, 7052; Act of May 26, 1873, p. 101; Vance v. Lindsey, 60 Texas, 289; Miller v. Moss, 65 Texas, 183.

Where one person owns the legal and another the equitable title to land, if the owner of the equitable title fail to assert his title within four years after the perfection of the legal title, it will be conclusively presumed that the matter has been adjusted between the parties in favor of the legal title, R. S., art. 3207; Rowe v. Horton, 65 Texas, 90; Storer v. Lane, 1 Texas Civ. App., 257; Yeary v. Cummings, 28 Texas, 92; Smith v. Hampton, 13 Texas, 259; Holman v. Criswell, 15 Texas, 399; Glasscock v. Nelson, 26 Texas, 152; Smith v. Fly, 24 Texas, 345; Kuhlman v. Baker, 50 Texas, 630; Munson v. Hallowell, 26 Texas, 475; Chamberlin v. Boon, 74 Texas, 659; Boon v. Chamberlin, 82 Texas, 480; Sheldon v. Sternberger, 25 S. W. Rep., 333; Story's Eq. Pl., sec. 813; Story's Eq. Jur., sec. 1520; Lewin on Tr., 2nd Vol., p. 869, subdiv. 13.

*Oliver S. Kennedy,* for appellees.—1. Hill was never in possession of the land at any time, and the right of action, appellees or their grantors ever had against him, would have been to have had the patent and location cancelled, and this was never necessary, because both were absolutely void, for the reason that the land they embrace was not public domain at the time of its location by Hill, and the issuance of his patent. Lackey could treat it as void without, in any manner, affecting his title, which he chose to do, until sued, and then he had a right to ask the court to cancel it because it was void and obtained by fraud, and no limitation could protect him under the facts proven, the affidavits of abandonment by Lackey, having been shown to be false. Udell v. Peck, 70 Texas, 552; Speer v. Leman, 27 Texas, 215.

2. Lackey and family having occupied this land for three years were entitled to it as a homestead. Paschal's Digest, arts. 7046, 7052; Miller v. Moss, 65 Texas, 182; Vance v. Lindsay, 60 Texas, 287.

3. The pre-emption settlement of R. H. Lackey, as stated herein, gave him a vested right, and entitled him to the protection given to such right by the guarantee contained in every constitution we have had since that of the Republic. Snyder v. Methven, 60 Texas, 499.

TARLTON, CHIEF JUSTICE.—The appellants, R. M. Wynne, Robert

McCart and A. J. Booty, brought this action of trespass to try title to recover from O. S. Kennedy and John P. King, the appellees, 60 acres of land out of the R. H. Lackey survey, in Tarrant County, Texas. The defendant Kennedy entered a disclaimer, and the controversy here concerns the appellants and the remaining appellee, King.

The latter filed a plea of not guilty. He further specially answered that the plaintiffs deraigned their title by a conveyance from one A. L. Hill, who had secured the issuance of a patent to land embracing that in suit. By way of reconvention, the defendant, King, prayed for the cancellation of this patent, for reasons which will hereafter appear. He also, by way of reconvention, alleged that he was the owner of the land through R. H. Lackey, by virtue of the latter's settlement and occupancy of the land for three years; and he prayed for a recovery against the appellants upon the title thus required.

To this answer the appellants replied, setting up their title under the survey and location made for A. L. Hill on March 8, 1878, covering the land in question, by virtue of a patent issuing upon the survey July 10, 1883, and by virtue of a subsequent conveyance from Hill to the appellants. They alleged that more than ten years had elapsed after the survey for Hill before the institution of this suit or the filing of the defendants' answer, so pleading the bar of ten years to the claim of defendants founded upon the Lackey location. They alleged that defendants' claim was a stale demand, and further urged the statute of four years' limitation against the cross-action.

The court, trying the case without a jury, rendered judgment that the plaintiffs take nothing; that the defendant King, under his plea in reconvention, recover of the plaintiffs the land in controversy; that he take nothing by his plea in reconvention, in so far as he seeks the cancellation of the patent (this specific relief being barred under the four years' statute invoked by the plaintiffs). From this judgment the appellants prosecute the present appeal.

The record contains no statement of facts, and we adopt the conclusions of fact found by his Honor, as follows:

1. In the year 1858 R. H. Lackey was a married man, with a wife and children, and in that year he settled upon and improved a tract of 160 acres of land in Tarrant County, Texas, in which is embraced the land in controversy in this suit. On the 9th day of April, 1860, R. H. Lackey, by his own oath and by the oaths of Joseph Frank and Henry Ruphoff, proved that he was bona fide settled and making improvements upon the 160 acres of land, by affidavit of the parties named made before G. Nance, Clerk of the County Court of Tarrant County, Texas, on April 9, 1860, which affidavit was filed in the General Land Office on the 25th day of May, 1861. On the 16th day of March, 1861, R. H. Lackey had the 160 acres of land surveyed, and had the field notes filed and recorded in the office of the surveyor of Tarrant County, Texas, on the 20th day of March, 1861, and had the same filed in the General Land Office on the 25th day of March, 1861. R. H. Lackey and his family lived

upon the land, improved, used, cultivated and enjoyed it, up to the time of the death of R. H. Lackey. in the year 1864, continuously from the time of his settlement of the same; and his family so lived upon the land, and used, improved and cultivated it, continuously from the date of the death of Lackey up to the year 1868.

2.   Lackey did not make any proof of his occupancy of the land as aforesaid, and have the same filed in the office of the Commissioner of the General Land Office.

3.   The 60 acres of land in contest in this suit is a part of the 160 acres of land so settled upon, improved and occupied by Lackey and family.

4.   On January 5, 1882, A. L. Hill caused to be filed in the General Land Office the affidavit of W. R. Woodall and J. F. Bedwell, stating in substance, that in the matter of the A. L. Hill 160 acres, J. Armendaris survey, covering the R. H. Lackey pre-emption survey, they know that R. H. Lackey abandoned that survey on or before 1868; that Lackey left the survey with the intention to give up and fully abandon it, and that he never returned to it at any time thereafter, or assumed any charge or control thereof; and they further swear that they, nor either of them, have any interest whatever in the land herein mentioned.

5.   Lackey settled upon the land as a part of the public domain, under the act approved February 1, 1860.

6.   On the 19th day of March, 1878, A. L. Hill filed upon the 160 acres of land, which embraces the land in contest, with a land certificate for 640 acres of land, No. 34, issued to Juan Armandaris and transferred to Hill, and upon the same day caused the land to be surveyed by the surveyor. of Tarrant County, Texas, and duly returned field notes of the survey, and had them duly recorded in the General Land Office, in accordance with law; and on the 10th day of July, 1883, the land was patented to A. L. Hill, under and by virtue of the location and survey under the Armandaris certificate, and that patent was duly recorded in the office of the County Clerk of Tarrant County on the 15th day of September, 1883.

7.   The plaintiffs own whatever title A. L. Hill had in the land by virtue of his location thereon of the Armandaris certificate and the patent issued to him thereon; and the defendant John P. King owns whatever title the Lackeys have to the land by virtue of the location thereon as a pre-emptor of R. H. Lackey and his residence thereon for more than three years, which appears from a written agreement of the parties hereto.

The appellants first question the correctness of the court's conclusion of law to the effect that R. H. Lackey, by virtue of the findings of fact herein, became the equitable owner of the land in controversy; that his equitable title was complete without making proof of occupancy and improvements, which was only necessary to procure the issuance of a patent.

It is contended by the appellants, that to become the owner, Lackey

must not only have occupied the land for three years, but must have filed an affidavit in the Land Office to the effect that he has occupied and improved the land in good faith for three years, which affidavit must have been corroborated by the affidavits of two disinterested citizens in the county in which the land is situated.

The rights of Lackey must be tested by the provisions of the law on which his claim is founded. The court's unchallenged finding is that he settled upon the land as a part of the public domain, under the act approved February 1, 1860. Referring to this statute (Acts of 8th Leg., 1859-60, p. 30, Sayles' Early Laws, vol. 2, art. 2830), we find that sections 8 and 9 refer to the subject before us.

These sections are as follows:

"Sec. 8. All heads of families, who are settled upon, or who may hereafter settle upon any vacant public domain, except those lands, the sale of which is provided for in the second section of this act, shall have the privilege of purchasing one hundred and sixty acres of land, or less, where it is entirely surrounded by previous surveys, to include his or her improvement, in preference to all others, at fifty cents per acre.

"Sec. 9. Any one desiring to obtain the benefits of the preceding section of this act, shall, within six months after the passage of this act, or within three months after his or her settlement, file, with the district surveyor, his or her affidavit and that of two creditable witnesses, made before any officer authorized to administer oaths, in the land district in which the land is situated, that he or she is bona fide settled and making improvements upon vacant public domain, the sale of which is contemplated in the first section of this act; and that he or she has not previously taken or filed a pre-emption under this act, on vacant land, and shall at the same time file, with said surveyor, a designation of the land sought to be secured, and said settler shall, within twelve months, have said land surveyed and his or her field notes recorded and returned to the General Land Office, and shall be required to pay taxes on the same, from the date of his or her settlement, and the money paid within three years from the date of his or her file, or the preference herein provided shall cease, and said land become vacant and subject to location or purchase; and that no claim under this act, shall be transferrable or assignable, until the rights to the land shall be perfected."

This act of 1860 was itself an amendment of an act of 1858 (Sayles' Early Laws, art. 2757), the first section of which is referred to in the ninth section above quoted. The latter section must therefore be read in the light of the provisions of sec. 1 of the act of 1858, reading as follows: "The commissioner of the general land office is authorized to issue land scrip in certificates of not less than one hundred and sixty acres (except in the cases hereinafter provided) which certificates may be sold at the price of one dollar per acre, shall issue in the name of the purchaser, and may be located upon any vacant unappropriated public domain not

being set apart, held in reservation, or the location of which is prohibited by law."

It will be thus seen that the act under which Lackey, the vendor of the appellee King, settled upon this land, was one which contemplated settlement accompanied or succeeded by purchase at the price of fifty cents per acre. In this case, while finding that Lackey settled upon the land in controversy under the provisions of the foregoing act, the court does not affirmatively find that he complied. with all of its provisions, as that he paid taxes from the date of his settlement, or that he paid the money or purchase price within three years from the date of filing. This omission in the findings is not complained of by any assignment of error, and in the absence of a statement of facts, we deem it our duty to impute to the court, in support of its judgment, a finding that the settler had complied with the provisions of the law under which he entered.

In any event, we are of opinion that the provisions of this law did not require, as necessary to the perfecting of his equitable title, that the settler should file in the Land Office an affidavit of occupancy and improvements, in accordance with the contention of the appellants. Subsequent enactments prescribing the manner in which the equitable title thus acquired should be perfected into a legal title, by the securing of patent (Paschal's Digest, arts. 7045-6; Act May 26, 1873, p. 110, cited by appellants), can not impair the efficacy of the equitable title vested in the settler and purchaser by compliance with the prior law.

It thus follows, we think, that the land in controversy comes within the language of art. 14, sec. 2, of the Constitution, "as land equitably owned under color of title from the sovereignty of the State, evidence of the appropriation of which is on the county records or in the General Land Office"; and that as such it was withheld from the location of the certificate of Hill, appellants' vendor. Adams v. Railway, 70 Texas, 260.

It does not follow, however, that the patent issued by virtue of that location was absolutely void. That instrument would seem to have passed to the appellants' vendor the naked legal. title of the State. Gullett v. O'Connor, 54 Texas, 416.

Hence the question is presented by appellants' brief, whether the bar of four years' limitation (art. 3207, R. S.) can be invoked against the assertion of appellees' demand in reconvention. In this connection, his Honor concluded "that the defendants' plea in reconvention, so far as the same seeks to cancel the patent of the State to A. L. Hill, is a personal action and in effect a claim that plaintiffs hold said land in trust for defendants, and that the four years' statute of limitation causes defendants' action for cancellation of said patent to be barred, and that the statute of limitation of ten years has no application to the case."

He further finds, "that the defendant King is the equitable owner of the land, and is entitled to recover it; but not having brought his action in four years from the date of the patent to Hill, he is not entitled to have said patent cancelled, but must hold his land clouded by said patent."

We approve these conclusions. Article 3207, R. S., reads as follows: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued, and not afterward."

We think, with the trial court, that the suit of the defendant King to have the patent cancelled comes within the purview of this statute, but that the assertion by him of his superior equitable title to the land, in this action of trespass to try title, is a suit for the recovery of real estate, and is beyond the terms of the article.

The provisions of art. 3209, prescribing that, "any action for the specific performance of a contract for the conveyance of real estate shall be commenced within ten years next after the cause of action shall have accrued, and not afterward," can not avail the appellants. If otherwise applicable (which we certainly do not hold), the requisite period of ten years had not elapsed after the appellants' vendor acquired the legal title through the issuance of the patent, July 10, 1883, and the filing of the defendant's plea in reconvention in assertion of his equitable title, on November 18, 1892.

The contention that Lackey should be deemed to have abandoned the land after he had acquired the equitable title thereto, can not be sustained by us. The record fails to indicate (further than as shown by the defendant's plea of not guilty) who is in possession of the land, or whether the direct vendee of Lackey took possession. The findings of the court indicate a conclusion against the appellants on this question of abandonment, which is to a great extent a question of fact, with reference to which the appellants have failed to enlighten this court by embodying a statement of facts in the record.

We order that the judgment be affirmed.

*Affirmed.*

Delivered Dec. 7, 1895.